# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| NOBELBIZ, INC. <br><br> V. <br><br> GLOBAL CONNECT, L.L.C. | Case No. 6:12-cv-244-MHS |
| V. <br><br> T C N, INC. | Case No. 6:12-cv-247-MHS |

## MEMORANDUM OPINION AND ORDER

 This claim construction order construes the disputed claim terms of U.S. Patent No. 8,135,122. On October 9, 2013, the Court held a claim construction hearing to construe the disputed terms. For the following reasons, the Court adopts the constructions set forth below. A summary of the final constructions is included with this Order as Attachment A.

# CONTENTS

I.      BACKGROUND ......................................................................................................3
II.     LEGAL PRINCIPLES ..........................................................................................3
III.    CONSTRUCTION OF DISPUTED CLAIMS ......................................................6
        A.      Person of Ordinary Skill in the Art ..........................................................6
IV.     CLAIM TERMS FOR CONSTRUCTION............................................................6
        A.      "processing an outbound call" and "processing a call originated" ........6
                1.      The Parties' Positions..................................................................7
                2.      Analysis........................................................................................9
        B.      "replacement telephone number"............................................................10
                1.      The Parties' Positions................................................................10
                2.      Analysis......................................................................................12
        C.      "modify[ing] caller identification data of the call originator" and
                "modified caller identification data of the call originator"..................14
                1.      The Parties' Positions................................................................14
                2.      Analysis......................................................................................16
        D.      "a trigger"...............................................................................................17
        E.      "geographic region"................................................................................18
                1.      The Parties' Positions................................................................18
                2.      Analysis......................................................................................20
V.      THE COURT'S DUTY TO FURTHER CONSTRUE A CLAIM TERM FOUND
        TO HAVE A PLAIN AND ORDINARY MEANING ........................................21
VI.     CONCLUSION.....................................................................................................24

# I.    BACKGROUND

This is a patent infringement suit. NobelBiz alleges infringement of U.S. Patent No. 8,135,122 (the '122 Patent) by Defendants Global Connect and TCN. The '122 Patent, entitled "System and Method for Modifying Communication Information (MCI)," was filed on November 11, 2011, and issued on March 13, 2012.[1]

In general, the '122 Patent relates to a system, computer, and computer-implemented method to modify a communication from a call originator, such as a call center, to a call target "to provide a call back number or other contact information to the Target that may be closer to or local to the Target, in order to reduce or eliminate the payment of long distance toll charges in the event the Target dials the callback number." The '122 Patent at 1:43–49.

# II.    LEGAL PRINCIPLES

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

The claims of a patent define the scope of the invention. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). They provide the "metes and bounds" of the patentee's right to exclude. *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). Accordingly, claim construction begins with and "remain[s] centered on

---

[1] The '122 Patent is a continuation of U.S. Patent Application Serial No. 13/013,233, filed on January 25, 2011, which is a continuation of application No. 11/584,176, filed on October 20, 2006, now U.S. Patent No. 7,899,169 (the Parent Patent), which claims an effective filing date of October 20, 2005, the date of filing of provisional application No. 60/728,717.

the claim language itself." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004).

Claim terms are normally given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.

The best guide for defining a disputed term is a patent's intrinsic evidence. *Teleflex*, 299 F.3d at 1325. Intrinsic evidence includes the patent's specification and the prosecution history. *Id.*

The claims are part of the specification. *Markman*, 52 F.3d at 979. The context in which a term is used in the claims instructs the term's construction. *Phillips*, 415 F.3d at 1314; *see also Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("[T]he language of the claim frames and ultimately resolves all issues of claim interpretation."). "Differences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314.

In addition to the claims, the specification's written description is an important consideration during the claim construction process. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The written description provides further context for claim terms and may reflect a patentee's intent to limit the scope of the claims. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elam Computer Grp., Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583).

But care must be taken to avoid unnecessarily reading limitations from the specification into the claims. *Teleflex*, 299 F.3d at 1326; *see also Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims."). "[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water*, 381 F.3d at 1117; *see also Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

The prosecution history is also part of the intrinsic evidence. *Phillips*, 415 F.3d at 1317. It "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* "As in the case of the specification, a patent applicant may define a term in prosecuting a patent." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Statements made during the prosecution of the patent may limit the scope of the claims. *Teleflex*, 299 F.3d at 1326; *see Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (explaining that the doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution").

Finally, the Court may rely on extrinsic evidence to aid with understanding the meaning of claim terms. *Markman*, 52 F.3d at 981. Extrinsic evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 980. Extrinsic evidence is generally less useful or reliable, *Phillips*, 415 F.3d at 1317, and it should not be relied on when it contradicts the intrinsic evidence. *Markman*, 52 F.3d at 981.

## III. CONSTRUCTION OF DISPUTED CLAIMS

### A. Person of Ordinary Skill in the Art

NobelBiz and Defendants agree that the hypothetical person of ordinary skill in the art would have a bachelor's degree plus two years of experience in the field of telecommunication. NobelBiz adds one more requirement, which is that the person of ordinary skill in the art have familiarity with call center telephone operations. NobelBiz states that "[t]his difference is not dispositive, given the proper application of claim construction canons" (Doc. No. 94 at 1).

This Court adopts the agreed definition.

## IV. CLAIM TERMS FOR CONSTRUCTION

The disputed terms appear in claims 1, 6, 8, 11, 12, 16, 18, 20, and 21. At the beginning of the claim construction hearing on October 9, 2013, the Court provided the parties with the Court's preliminary proposed construction for the disputed terms. The Court provided these preliminary proposed constructions to facilitate discussion and to focus the parties' arguments. After conferring on the Court's proposed constructions, the parties reached agreement on one term, "trigger," as explained below.

### A. "processing an outbound call" and "processing a call originated"

| Claim Term, Phrase, or Clause | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "processing an outbound call | No construction needed. | Performing one or more steps |

| | | |
|---|---|---|
| from a call originator to a call target" | | on a telephone call after the telephone call has been originated and sent to the call recipient. |
| "processing a call originated by a call originator to a call target" | | |

### 1. The Parties' Positions

These disputed clauses appear in the preamble of claims 1, 6, and 16. NobelBiz submits that the preambles are not limiting at least because deletion of disputed phrases from the preambles would not affect the structural or functional elements in the body of the claims (Doc. No. 88 at 14). NobelBiz argues that the preambles merely give descriptive names to the set of claim elements in the body of the claim and describe the purpose of the system and computer (Doc. No. 94 at 2).

Defendants urge the Court to adopt the preambles as limiting, particularly so that the term "outbound call" in the preamble of claim 1 and the term "call originated" in the preambles of claims 6 and 16 become limitations (Doc. No. 89 at 4). Defendants argue that all five of the factors outlined by the Federal Circuit for rendering a preamble limiting are met here. The factors are: (a) the terms in the preamble are relied on for antecedent basis to the same terms in the body of the claim; (b) the preamble is necessary to give life, meaning and vitality to the claim; (c) the terms of the preamble are essential to understand terms in the body of the claim; (d) the preamble recites structure or steps that are essential or underscored as important by the specification; and (e) the preamble is used by the claim drafter to define the subject matter of the claimed invention. *In re Cruciferous Sprout Litig.,* 301 F.3d 1343, 1347 (Fed. Cir. 2002); *The C.W. Zumbiel Co. v. Kappos,* 702 F.3d 1371, 1385 (Fed. Cir. 2012).

As to factor (a), Defendants argue that the terms "call originator" and "call target" are introduced by "a" in the preamble, and referred to as "the …" in the claim body (Doc. No. 89 at 5). For factor (b), they argue that the limitations of "modify[ing]" in the body of the claim only

make sense in the context of the preamble of claim if the term "outbound" is a limitation (Doc. No. 89 at 5). Regarding factors (c) and (d), Defendants argue that the preambles are essential and underscored as important throughout the specification (Doc. No. 89 at 6). The central point of the '122 Patent is to modify the caller ID of a captured outbound call. The term "outbound" is found in the preamble of claim 1, in the abstract, and in the specification (2:25–55 and 3:21, 39; and 4:21). The term "originated" is found in the preambles of claims 6 and 16, and in the specification at 1:19, 33 and 2:46. Finally, as to factor (e), Defendants argue that the amendments made to the claims by the patent examiner after a telephone interview with the applicant and applicant's attorney show that the preambles were relied on as limiting by the examiner (Doc. No. 89-2 at 5–6).

NobelBiz counters that dependence upon a preamble term for antecedent basis "*may* limit claim scope" but it is not dispositive (Doc. No. 94 at 3, emphasis original). NobelBiz argues that it did not rely on the preambles to distinguish over any prior art during the prosecution (Doc. No. 88 at 14). It asserts that the patent examiner did not specifically state that any preamble was limiting but merely noted that the prior art failed to teach or render obvious "a system for processing an outbound call from a call originator to a call target comprising the claimed means and their components, relationships, and functionalities as specifically recited in the claims" (Doc. No. 89-2 at 5–6). NobelBiz contends that this makes it clear that the examiner did not consider the preamble to be in the "claims" (Doc. No. 94 at 4).

NobelBiz notes that the particular terms said to be important by Defendants, namely "outbound" and "originated," are not referenced in the body of the claims (Doc. No. 94 at 3). It further argues that the body of the claims "breathe life" into the claims through terms such as storing, processing, and transmitting without the aid of any preamble limitations. Assuming,

*arguendo*, that the preamble is limiting, NobelBiz argues that Defendants improperly seek to read a temporal sequence of steps into the preamble, namely "after the telephone call has been originated and sent to the call recipient." NobelBiz contends that the patent specification describes the process flow of the invention without any contemplation of a temporal sequence of steps (Doc. No. 94 at 4).

*2.     Analysis*

The "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). The preamble should be deemed limiting "when the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention." *Bell Comm'cns Research, Inc. v. Vitalink Comm'cns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995).

Here, NobelBiz correctly points out that neither the term "an outbound call" nor the term "a call originated" is found in the body of the claims. Only the terms "a call originator" and "a call target" in the claim body depend on the preamble as an antecedent basis.

While the term "outbound" is a potentially limiting term, it is not necessary because the body of the independent claims provide sufficiently clear statements of the various elements or steps of the system (claim 1), computer (claim 6) and method (claim 16) of the claims.

Regarding the prosecution history, the Court agrees with NobelBiz that the examiner's statement of reasons for allowance is too generic to support conversion of "outbound," "originated" and other preamble language of claims 1, 6, or 16 into limitations (*see* Doc. No. 89-2, at GC 000293-4).

The Court finds that the terms "**processing an outbound call from a call originator to a call target**" and "**processing a call originated by a call originator to a call target**" that appear in the preamble are **not limiting**.

**B.** **"replacement telephone number"**

| Claim, Term, Phrase, or Clause | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "replacement telephone number" | A number other than the call originator system telephone number. | A telephone number different from the original telephone number in the caller ID data that is substituted in place of the original telephone number in the caller ID data. |

*1.*     *The Parties' Positions*

NobelBiz criticizes Defendants' proposed construction because the terms "substituted" and "original telephone number" are not in the intrinsic record. According to NobelBiz, Defendants' efforts to limit the claim term by addition of terms not found in the patent specification violate the basic tenets of patent law (Doc. No. 88 at 11).

Defendants assert that NobelBiz errs in contending that this "*other* telephone number" is the "'call originator system telephone number,' even if [it] does not actually exist or is not actually in the caller ID data of the telephone call being processed" (Doc. No. 89 at 9). According to Defendants, NobelBiz's position is that "any telephone number the Defendants insert into the 'from' field for their originated calls will be a 'replacement telephone number' because it is different from a completely non-existent 'call originator system telephone number'" (Doc. No. 89 at 9–10). Defendants argue that this is the reason why NobelBiz wants to avoid the term "replacement" and instead use the broader term "other."

NobelBiz, in turn, argues that there is no support in the intrinsic record for Defendants' proposed "original telephone number" (Doc. No. 88 at 12). NobelBiz also criticizes Defendants' reference to on-line dictionaries which have no connection to telecommunications. Further, Defendants have offered no evidence that a person of ordinary skill in the art would consult such non-technical dictionaries.

Defendants respond that the modify/modifying step, which is present in all the claims, is consistent with the term "replacement." Defendants argue that various dictionaries support and justify their argument that use of the term "substituted" instead of the term "replacement" (Doc. No. 89 at 10, citing the '122 Patent 5:4–21, 5:35–54, and 6:21–37). Additionally, Defendants contend that the modification claim step "necessarily changes the first, already existing telephone number in the caller ID of the outbound call to a second, 'replacement telephone number'" (Doc. No. 89 at 10). According to Defendants, under the claims, a new telephone number is not being created, but rather, the original telephone number (or some aspect of it) is being modified. Thus, Defendants believe that use of "substitution" rather than "replacement" is proper.

Emphasizing their concern that NobelBiz is attempting to capture an accused system which should clearly be outside the scope of the claims, Defendants argue that NobelBiz cannot alter the claim construction to such a broad scope that a "replacement telephone number" does not replace anything (Doc. No. 89 at 10). Because the specification states it is desirable to provide a callback number that is closer to or local to the target, the '122 Patent, 1:43–46, Defendants suggest that a comparison of the original communication and the modified communication is made (Doc. No. 89 at 11).

NobelBiz points out, however, that Defendants' suggested term "substituted" is not found in the specification (Doc. No. 94 at 6). NobelBiz argues that "there is a replacement," but that change "is not effectuated by substitution" (Doc. No. 94 at 6). NobelBiz also criticizes Defendants for their attempt to justify "substituted" because another claim element refers to *modifying* caller identification data. NobelBiz emphasizes that it is possible to modify the caller identification data "in the signals transmitted in an originated call to establish a telephone connection between a call originator and a call target, wherein such transmitted signals include the replacement telephone number *without any substitution* of any existing telephone number in the caller identification data" (Doc. No. 94 at 7, emphasis added). Finally, NobelBiz argues that the originator and replacement telephone numbers are both telephone numbers, and that the only difference is that "the replacement telephone number is a number *other* than the originator telephone number (Doc. No. 94 at 7).

   2.   *Analysis*

This Court notes that both NobelBiz and Defendants are guilty of attempting to shore up their respective infringement and non-infringement positions. NobelBiz improperly attempts to broaden the claim term to be construed by eliminating "replacement" and inserting in its place the term "other." On the other hand, Defendants attempt to gain an overly narrow claim interpretation by inserting as limitations "substituted" and "caller ID data."

NobelBiz's references to the specification at col. 1, ll. 56–61 and to the abstract are of no help because neither description even mentions "replacement telephone number." These descriptions are simply not express definitions as suggested by NobelBiz.

"Replacement telephone number" was added by examiner's amendment in the patent application that issued as the '122 Patent. "Replacement telephone number" was also used in the

claims of the parent U.S. Patent No. 7,899,169, which has the same specification as the '122 Patent.

NobelBiz cautions against speculation as to why such amendments were made and characterizes this issue as prosecution history disclaimer, which places a high burden on Defendants to prove. (Doc. No. 94 at 7). The Court disagrees. It is more than reasonable for the Court to conclude that, whether "replacement telephone number" was offered as an additional limitation by NobelBiz, or added at the request of the patent examiner, the '122 Patent would not have issued without the additional limitations added to the claims by examiner's amendment.

Regarding Defendants' use of the "caller ID data" as part of the proposed construction, this term is used in claim elements 1(d), claim element 6 (b)(iv), and claim 16 (d). In the Court's opinion, it is not necessary to incorporate "caller ID data" from another claim limitation into this proposed claim term. This would clearly constitute incorporating a new limitation into the claims, which is contrary to the canons of claim construction.

In sum, neither party has offered an objective basis to broaden (NobelBiz) or narrow (Defendants) the term "replacement telephone number." Because the Court concludes that the term is not ambiguous and will be easily understood by a jury, plain and ordinary meaning should prevail.

The Court construes the term "**replacement telephone number**" to give it its **plain and ordinary meaning**.

### C. "modify[ing] caller identification data of the call originator" and "modified caller identification data of the call originator"

| Claim, Term, Phrase, or Clause | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "modify[ing] caller identification data of the call originator to the selected replacement phone number" | No construction needed. | Chang[ing] the caller ID data by replacing the original telephone number in the caller ID data with the selected "replacement telephone number" (as defined above). |
| "modified caller identification data of the call originator" | No construction needed. | The caller ID data of the telephone call after "modifying the caller identification data" (as defined above). |

Both terms include the common phrase: "modify[ing]/modified caller identification data of the call originator." This is the term that should be construed because the additional term in the first clause—"to the selected replacement telephone number"—needs no further construction.

### 1. The Parties' Positions

NobelBiz argues that no construction is needed because the ordinary meaning is clear from the claim language, and Defendants' proposal to inject terms such as "changing," "replacing," and "caller ID" into the claim terms is merely an attempt to convert "ordinary [meaning] into complex (and confusing) meaning" (Doc. No. 88 at 16).

Defendants argue that, without the Court's construction, NobelBiz will make a specious argument that the "replacement telephone number" does not need to replace anything in order to modify the caller ID (Doc. No. 89 at 13). Defendants further point out that, because the claims refer to "modified" caller ID data, there must have been some unmodified caller ID data that was changed by this step.

NobelBiz asserts that Defendants' attempted insertions are intended to assist their non-infringement positions by limiting the claim language to one particular embodiment (Doc. No. 88 at 21, citing *Verizon Servs. Corp. v. Cox Fibernet Va. Inc*., 602 F.3d 1325, 1332 (Fed. Cir. 2010)). NobelBiz refers to column 3, lines 50–54 of the '122 Patent as the particular embodiment to which Defendants seek to narrow the claim: "Based on the results of the search in column B [of Fig. 5], information in the communication may be modified to appear as what is shown in the corresponding entry in column C, i.e. the telephone number in column C may be displayed in the Caller ID field in the call to Target." NobelBiz asserts that this description is merely one potential way that a system could modify call ID data to the selected replacement telephone number for the call originator. NobelBiz's position is that a person of ordinary skill in the art would understand this term to mean nothing more that its "plain meaning of using a selected replacement telephone number for the caller ID data when attempting to establish a telephone connection" (Doc. No. 88 at 17).

Defendants counter that, during the prosecution, NobelBiz sought an overly broad claim under which the caller ID is created when the call is originated. This claim was refused by the patent examiner, who required (by examiner's amendment) that the claims be amended to require modifying the caller ID data using the replacement telephone number (Doc. No. 89-2 at pp. GC 000290–99). The patent examiner amended claim 11 of the application, which became claim 1 of the '122 Patent, to specifically add the insertions underlined and in red in the amended claim:

> "11. (Currently Amended) A system for processing an outbound call from a call originator to a call target, the system comprising:
>
> a database storing a plurality of outgoing telephone numbers;
>
> an information processor controlled by the call originator and configured to process a trigger comprising a telephone number of the call target;

> access the database and select ~~one of~~ <u>a replacement telephone number from</u> the plurality of outgoing telephone numbers <u>based on at least an area code of the telephone number of the call target</u>;
>
> <u>modify caller identification data of the call originator to the selected replacement telephone number, the selected replacement telephone number</u> having at least an area code the same as an area code of the telephone number of the call target; and
>
> ~~originate the outbound call to the call target and include the selected one of the plurality of outgoing telephone numbers into a caller ID field of the outbound call~~
>
> <u>transmit the modified caller identification data of the call originator to the call target.</u>

NobelBiz argues that it never bargained for such language before the USPTO (Doc. No. 88 at 17). Defendants respond that NobelBiz tried but failed to obtain a claim under which the caller ID is created when the call is originated (Doc. No. 89 at 13). Defendants further argue that this term "modify caller identification data" added by the examiner must be data that has been modified from some <u>unmodified</u> caller identification data of an existing telephone call. But according to NobelBiz, "[t]he claim language is agnostic to what it is modifying—the only requirement is that the modifying step occurs" (Doc. No. 94 at 8).

### 2. *Analysis*

First, the Court rejects NobelBiz's contention that it never bargained for limiting language because it is inconsistent Nobelbiz's acceptance of claims of more limited claim scope in order to the get the application allowed. The claims as amended contained multiple new limitations relating to "replacement telephone number," "modify[ing] the caller ID data" and "transmit[ting] the modified caller identification data."

Yet—contrary to Defendants attempt to insert additional limitations, such as "chang[ing] the caller ID data"—the term "modify" is fully supported by the specification. The term modify also has significant meaning because the term was added by the patent examiner in order for the

claims to gain allowance. Defendants argue that Patent Examiner Nguyen—who was also the examiner during prosecution of the parent patent—wanted to prevent NobelBiz from gaining significant claim scope in the continuation application that ultimately issued as the '122 Patent. NobelBiz has been unable to credibly refute that contention.

At the claim construction hearing, Defendants argued that NobelBiz was required to amend the claims to a "catch and release" system. According to Defendants, it is clear that the modify[ing] and "modified" terms do not include within their scope originating a telephone number into a field where none existed (Doc. No. 104 at 19–22, 25, 28). But Defendants' proposed construction attempting to insert "changing" and "replacing" are unnecessary and unsupportable additional restrictions.

Thus, the Court construes the terms "**modify[ing] caller identification data of the call originator to the selected replacement phone number**" and "**modified caller identification data of the call originator**" to give them their **plain and ordinary meaning**. And, as noted above, the additional limitation "to the selected replacement telephone number" needs no further construction.

### D.    "a trigger"

| Claim, Term, Phrase, or Clause | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "a trigger" | One or more predetermined numbers or communications. | An identifier of the call that, if present, results in "modifying caller identification data (as defined above). |

At the beginning of the claim construction hearing, the Court presented to the parties its suggested construction for "a trigger." The Court understood that the parties agreed to the Court's proposal: "a predetermined communication that is processed." But during their argument, while NobelBiz was content with the Court's proposal, Defendants pressed for more detail in this

construction. First, Defendants argued that the Court should add in a limitation stating where the trigger came from. The Court disagrees. Defendant has filed no motion for summary judgment of indefiniteness regarding the term "trigger." The Court believes that the construction proposed by the Court is sufficient without adding a limitation as to where trigger originates.

Further, Defendants argued that the Court's proposed definition does not capture the understanding that the term "trigger" operates to activate further processing. The Court agrees, and hereby amends its previously suggested claim construction accordingly.

The Court construes the term "**a trigger**" to mean "**a predetermined communication which activates further processing**."

E.       **"geographic region"**

| Claim, Term, Phrase, or Clause | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "geographic region" | No construction needed | An indefinite and unbounded area of the world |

1.       *The Parties' Positions*

According to NobelBiz, Defendants propose a self-serving construction to assist their indefiniteness defense of their Motion for Summary Judgment of Indefiniteness. NobelBiz argues that "geographical region" needs no definition because it can be readily understood by a person of ordinary skill in the art (Doc. No. 88 at 18). NobelBiz further contends that Defendants' proposed construction contradicts the plain and ordinary meaning of the term in an attempt to render the term meaningless.

In rebuttal, Defendants argue that the term "geographic region" is inherently indefinite (Doc. No. 89 at 17). Citing online dictionary definitions of "region," Defendants argue that a person of ordinary skill in the art would only know that "geographic region" refers to an

indefinite and unbounded area (Doc. No. 89 at 18; Doc. No. 89-6; Doc. No. 89-11). Defendants also cite to an online dictionary definition of "geographic region" as "a demarcated area of the earth" (Doc. No. 89 at 18; Doc. No. 89-9). NobelBiz states that it does not disagree with this ordinary meaning (Doc. No. 88 at 19).

Noting NobelBiz's agreement that "geographical region" means "a demarcated area of the earth," Defendants argue that even this definition requires that an objective standard of demarcation must be provided in order for a person of ordinary skill in the art to determine whether two area codes are in the same region. Without some objective standard, Defendants argue that "geographical region" means "an un-demarcated area of the earth" (Doc. No. 89 at 19, citing *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984)). By way of example, Defendants argue that objective standards not found in the patent specification can cause different answers for whether Tyler, Texas, is in the same geographic region as El Paso, Texas, or Shreveport, Louisiana.

| Objective Standard | El Paso, TX | Shreveport, LA |
|---|---|---|
| Country Borders | Yes | Yes |
| State Borders | Yes | No |
| Time Zone Borders | No | Yes |
| City Borders | No | No |

Defendants argue that this chart illustrates that the answer depends "entirely on the objective standard used" (Doc. No. 89 at 19).

In response, NobelBiz refers to U.S. Patent No. 5,901,209 (the Tannenbaum Patent), which is cited prior art in the prosecution history, and thus intrinsic evidence. The patent examiner references the Tannenbaum Patent's specification (Doc. No. 89-2 at GC 000293), which referrs to the terms "geographically separated" and "geographically remote" (2:61–63); and "geographically dispersed" and "geographic proximity" (4:10–20) (*see* Doc. No. 94 at 10,

n.7; Doc. No. 94-1).NobelBiz argues that it is improper to read "geographic region" in a vacuum as to other claim terminology (Doc. No. 94 at 6, citing *Kyocera Wireless Corp.*, 545 F.3d 1340, 1347 (Fed. Cir. 2008); *Phillips*, 415 F.3d at 1314). NobelBiz asserts that the claims themselves provide substantial guidance as to the meaning of claim terms.

Defendants refer to claims 8 and 12 (depending from claim 6) and claims 18 and 21 (depending from claim 16), which further limit "geographic region" to one of a state or other municipality of a state. From this, Defendants conclude that the "geographic region" of claims 6 and 16 must be larger or broader than a state, arguing that the term remains indefinite because there is no objective standard outlining how much larger than a state the "geographic region" is (Doc. No. 89 at 20). Based on claim differentiation, Defendants argue that the term "geographic region" is indefinite because there is no objective standard or demarcation to prevent the term from indefiniteness, consistent with its own proposed claim construction.

2.    *Analysis*

Defendants have a serious argument that the term "geographic region," taken alone, is unbounded and indefinite. At the claim construction hearing, the Court offered the preliminary construction that a "geographic region" is "an area bounded by one or more area codes." In view of Defendants' Motion for Partial Summary Judgment of Indefiniteness (Doc. No. 90) and responsive pleadings, the Court concludes that the term is not indefinite. As will be more fully explained in the contemporaneously issued order on the motion for summary judgment on indefiniteness, the term "geographic region" is not so insolubly ambiguous as to be no amenable to construction.

Accordingly, the Court construes the term "**geographic region**" to mean "**an area bounded by one or more area codes selected to reduce or eliminate the payment of long distance toll charges in the event the call target dials the callback number**."

## V.    THE COURT'S DUTY TO FURTHER CONSTRUE A CLAIM TERM FOUND TO HAVE A PLAIN AND ORDINARY MEANING

At the claim construction hearing, the parties agreed with the Court that the term "replacement telephone number" has a plain and ordinary meaning. But the parties are diametrically opposed as to what that plain an ordinary meaning is (*see* Doc. No. 104 at 13:13–21; 18:17–22; 19:4–6). Thus, they each provide a more "specific" definition. But even Defendants concede that their construction "does look fairly unruly" (Doc. No. 104 at 19:25).

Also, regarding the "modify[ing] and "modified" claim terms in dispute, NobelBiz agreed with the Court that no construction was needed (Doc. No. 104 at 28:17–21). But Defendants argued that, even though "modifying is an easily understood term . . . the parties clearly misinterpret or interpret it differently" (Doc. No. 104 at 24:13–15). Still, Defendants state that they "would certainly appreciate some guidance as to . . . what this Court's feeling is" as to the plain and ordinary meaning (Doc. No. 104 at 24:21–23).

Thus, the Court ordered additional briefing on the following question: "Assuming that you agree on a term and that the term should be given its plain and ordinary meaning, under what circumstances must the Court still construe the term just because the parties want further clarification?"

In response, NobelBiz argues the neither of these terms require any further claim construction (Doc. No. 105 at 4). According to NobelBiz, the court should provide a further claim construction only if there remains a fundamental dispute to resolve (Doc. No. 105 at 1, citing *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co., Ltd.*, 521 F3d 1351, 1362 (Fed. Cir.

2008)). NobelBiz relies on *Input/Output, Inc. v. Sercel, Inc.*, No. 5:06-cv-236-MHS-CMC (E.D. Tex. April 28, 2008) (Doc. No. 105 at 3), where the Court held that it need not provide a construction that is redundant or prohibitively limiting. NobelBiz further argues that a court may also refuse to further define a term that is understandable to the jury. *Alcatel USA Res.,Inc. v. Microsoft Corp.*, No. 6:06-cv-500, 2008 WL 2625852, at *19 (E.D. Tex. June 27, 2008). Ordinary meaning may control if the court prevents jury arguments inconsistent with the court's adjudication of claim scope. *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, No. 6:06-cv-222, 2008 WL 2152268, at *1 (E.D. Tex. May 21, 2008).

In its brief in response to the Court's question, Defendants urge the court to resolve a fundamental dispute with respect to claim scope as to both the "replacement telephone number" and "modify[ing]" and "modified" terms. Reaching back to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), Defendants remind the Court that the dispute there involved the scope of the term "inventory," that is, whether the term included "cash or inventory receipts" (Doc. No. 106 at 2). Defendants argue that this Court's *Markman* obligation is not fulfilled until it has resolved the current disputes, which are similar to the construction dispute in the *Markman* (Doc. No. 106 at 2). Finally, Defendants argue that the Court's refusal to instruct the jury should not leave open a critical question of law for the jury to decide. *Creative Internet Adver. Corp. v. Yahoo!, Inc.*, 476 F. App'x 724, 728 (Fed. Cir. 2011).

The Court is cognizant of Defendants' concern that, without additional construction, NobelBiz may be free to argue to the jury that the '122 Patent claims should be construed to cover systems, including VoIP PBX systems like [Global Connect]'s 2007 System, that modify the "from" field of the call header, i.e., caller ID, ***before*** the call is originated (Doc. No. 37 at 2,

n.2 (emphasis added)). Defendants concern is clearly expressed in its characterization of the fundamental claim construction dispute as follows:

(a)     whether a telephone number inserted in the original called ID data at the time of a call's origination is a "replacement telephone number;"

(b)     whether inserting a telephone number into the caller ID data at [the] time of the call's origination is "modifying the caller ID;" and

(c)     whether the original caller ID of a telephone call can be a "modified caller ID."

(Doc. No. 106 at 3.) Thus, on the one hand, NobelBiz wants plain and ordinary meaning or even a broader construction. On the other hand, Defendants want a series of limitations added to the claim terms to require that "replacement telephone number" and the "modify[ing]" and "modified" phrases specifically require that an already existing telephone number in the caller ID field is substituted for, i.e., replaced. To that end, during the claim construction process, Defendants have sought a series of limitations to add to the claims. For each term, Defendants have proposed additional limitations, even when those limitations are not supported by the intrinsic evidence.

The disputed issues are similar to that found in *ReedHycalog,* where the court held that the term "substantially the same impact strength" presented a question of fact for the jury to resolve in determining infringement *vel non* rather that a question of law for the court to resolve. 2008 WL 2152268, at *4. For example, to support its case of non-infringement, Defendants could attempt to persuade the jury using essentially the same arguments used here for claim construction—that the plain and ordinary meanings of the "modify[ing]" and "modify" terms are not met if Defendants' accused products do not modify an original, existing telephone number, and that Defendants' systems do not have a "replacement telephone number." In other words, the plain and ordinary meaning of these claim terms give not only NobelBiz but also the Defendants

equally strong arguments regarding the infringement issue, which can be made to and understood by the jury.

The Court declines to further construe the terms that it has held subject to plain and ordinary meaning. The Court cannot, as a matter of law, add unjustifiable limitations to the claim terms in dispute. Importantly, the Court believes that the plain and ordinary meanings will be well-understood by the jury, particularly when the jury considers the terms and limitations of the claim.

## VI.     CONCLUSION

For the reasons stated, the Court adopts the constructions set forth above and summarized in Attachment A.

**It is SO ORDERED.**

**SIGNED this 13th day of December, 2013.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

| Claim Term/Phrase | Location | Court's Final Construction |
|---|---|---|
| "processing an outbound call from a call originator to a call target" | 1, 6, & 16 | preamble not limiting |
| "processing a call originated by a call originator to a call target" | 1, 6, & 16 | preamble not limiting |
| "replacement telephone number" | 1, 6, & 16 | plain and ordinary meaning |
| "modify[ing] caller identification data of the call originator to the selected replacement telephone number" | 1, 6, & 16 | plain and ordinary meaning |
| "modified called identification data of the call originator" | 1, 6, & 16 | plain and ordinary meaning |
| "a trigger" | 1 & 16 | a predetermined communication that activates further processing |
| "geographic region" | 6, 8, 12, 16, 18, 20, & 21 | an area bounded by one or more area codes selected to reduce or eliminate the payment of long distance toll charges in the event the call target dials the callback number |